



In the United States District Court
For the Eastern District of Pennsylvania

Ritchie Webb,
414 Lafayette St.
Bristol, PA 19007

         **Plaintiff**,

      v.

Bristol Borough
250 Pond Street
Bristol, PA 19007

    and

Arnold A. Porter, Individually and
in his official capacity as Bristol Borough
Police Department Chief of Police
250 Pond Street
Bristol, PA 19007

    and

Joseph Moors, Individually and in
his official capacity as a Bristol Borough
Police Department Sergeant
250 Pond Street
Bristol, PA 19007

    and

Randy Morris, Individually and in
his official capacity as a Bristol Borough
Police Department Detective  Sergeant
250 Pond Street
Bristol, PA 19007

    and

Robert A. Lebo, Individually and in
his official capacity as Mayor of Bristol Borough
250 Pond Street
Bristol, PA 19007

    and

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.

Demand for Jury Trial



Ralph Diguiseppe, Jr. in his           :
official capacity as                    :
Bristol Borough Council President    :
250 Pond Street                  :
Bristol, PA 19007               :
                              :

      and                   :
                              :

Christopher P. Gerber, Esquire      :
Siana, Bellowoar & McAndrew, LLP  :
Ludwigs Corner Professional Center  :
941 Pottstown Pike, Suite 200      :
Chester Springs, PA 19425       :
                              :

      and                   :
                              :

Siana, Bellowoar & McAndrew, LLP  :
Ludwigs Corner Professional Center  :
941 Pottstown Pike, Suite 200      :
Chester Springs, PA 19425       :
                              :

      and                   :
                              :

Maria Robles, Individually and in her  :
official capacity as a Bristol Borough :
Police Department Patrolwoman     :
250 Pond Street                  :
Bristol, PA 19007               :
                              :

      and                   :
                              :

Dean Johnson, Individually and in his  :
official capacity as a Bristol Borough :
Police Department Patrolman       :
250 Pond Street                  :
Bristol, PA 19007               :
                              :

      and                   :
                              :

James Ellis, Individually and in his   :
Official capacity as a Bristol Borough :
Police Department Patrolman       :
250 Pond Street                  :
Bristol, PA 19007               :
                              :

      and                   :
                              :

2

Charles Palmer, Individually and in his :
Official capacity as a Bristol Borough :
Police Department Patrolman :
250 Pond Street :
Bristol, PA 19007 :
         **Defendants** :
          :

## <u>Complaint</u>

### <u>Jurisdiction and Venue</u>

1.      Plaintiff's claims arise under federal laws to 42 U.S.C. §1983, 42 U.S.C. §1985 and 42 U.S.C. §1988 and the First and Fourteenth Amendments to the United States Constitution, making federal court jurisdiction proper under 28 U.S.C. §1331 and 28 U.S.C. §1343. State law claims arise from the same operative facts and therefore this Court may exercise pendent jurisdiction over them pursuant to 28 U.S.C. §1367.

2.      This action seeks declaratory relief and other appropriate relief, including costs, pain and suffering, punitive damages and attorney's fees, to redress the deprivation of Plaintiff's rights secured by 42 U.S.C. §1983, 42 U.S.C. §1985 and 42 U.S.C. §1988, the First and Fourteenth Amendments to the United States Constitution and the law of the Commonwealth of Pennsylvania.

### <u>PARTIES</u>

3.      Plaintiff RITCHIE WEBB, at all times relevant to this Complaint, was and is a citizen of the Commonwealth of Pennsylvania and the Borough of Bristol.

4.      Defendant BRISTOL BOROUGH, at all times relevant to this Complaint, is a municipality in Bucks County, Pennsylvania, and owns, operates, manages, directs and controls

the Bristol Borough Police Department, which employs the individually named defendant police personnel.

5.      Defendant ARNOLD A. PORTER, at all times relevant to this Complaint, was and is the Chief of Police of the Bristol Borough Police Department, acting under color of state law. He is being sued in both his individual and official capacities.

6.      Defendant JOSEPH MOORS, at all times relevant to this Complaint, was and is a Sergeant employed by the Bristol Borough Police Department, acting under color of state law, pursuant to either official policy, custom or practice of the Bristol Borough and/or its police department. Defendant Moors also serves as the President of the Police Benevolent Association (PBA), the police union for the Bristol Borough Police Officers. He is being sued in both his individual and official capacities.

7.      Defendant RANDY MORRIS, at all times relevant to this Complaint, was and is a Detective for the Bristol Borough Police Department, acting under color of state law. He is being sued in both his individual and official capacities.

8.      Defendant ROBERT A. LEBO is Mayor of Bristol Borough. He is being sued in both his individual and official capacities. Defendant Lebo is responsible for the hiring, training, supervision, promoting, and discipline of the Bristol Borough Police Department, and carries out the policies of Borough Council.

9.      Defendant RALPH DIGUISEPPE, JR., at all times relevant to this Complaint is Bristol Borough Council President. His responsibilities include policy making for the Borough of Bristol, including the police services as well as reviewing proposals for policy, operational procedures or personnel changes including hiring, training, supervision, promoting, and discipline of the Bristol Borough Police Departments officers, and carries out the policies of Borough Council. He is being sued in his official capacity.

4

10.     Defendant CHRISTOPHER P. GERBER, Esquire is an attorney licensed to practice law in the Commonwealth of Pennsylvania with an office located at Ludwigs Corner Professional Center, 941 Pottstown Pike, Suite 200, Chester Springs, PA 19425. Defendant Gerber acted as counsel and investigator to Defendants Borough of Bristol, Porter, Moors and Morris.

11.     Defendant SIANA, BELLOWOAR & MCANDREW, LLP, located at Ludwigs Corner Professional Center, 941 Pottstown Pike, Suite 200, Chester Springs, PA 19425, is a Pennsylvania limited liability corporation located in the city of Chester Springs in Chester County Pennsylvania, and employs Defendant Gerber and is thus vicariously liable for his actions.

12.     Defendant MARIA ROBLES, at all times relevant to this Complaint, was and is a Patrolwoman for the Bristol Borough Police Department, acting under color of state law. She is being sued in both her individual and official capacity.

13.     Defendant DEAN JOHNSON, at all times relevant to this Complaint, was and is a Patrolman for the Bristol Borough Police Department, acting under color of state law. He is being sued in both his individual and official capacity.

14.     Defendant JAMES ELLIS, at all times relevant to this Complaint, was and is a Patrolman for the Bristol Borough Police Department, acting under color of state law. He is being sued in both his individual and official capacity.

15.     Defendant CHARLES PALMER, at all times relevant to this Complaint, was and is a Patrolman for the Bristol Borough Police Department, acting under color of state law. He is being sued in both his individual and official capacity.

## FACTUAL BACKGROUND

16.     Plaintiff Ritchie Webb was hired by the Bristol Borough Police Department in 1999 as a part-time Patrol Officer.

17.     In August, 2004, Plaintiff Webb was promoted to a full time position and has held that position ever since.

18.     On August 29, 2008, Plaintiff Webb was the "officer in charge," and was working with Bristol Borough police officer Samuel C. Anderson, who was also on duty working solo in his own patrol vehicle.

19.     Both Plaintiff Webb and Anderson were parked in their own patrol vehicles in an empty lot on Route 13 across from the DeGrand Diner in Bristol Borough.

20.     On August 29, 2008 at approximately 3:15 AM Anderson received a call of a domestic dispute at 1932 Trenton Avenue, Bristol, Pennsylvania, to which location Anderson dispatched, and with Plaintiff Webb, responding as backup.

21.     On information and belief, the police call was prompted by a 9-1-1 call by the owner of the home, Joanne Cipressi, because her ex-boyfriend who was intoxicated, came over uninvited and refused to leave the home.

22.     On his arrival, Plaintiff Webb assessed the scene and conferred with Anderson who indicated that he had the situation under control, prompting Plaintiff Webb to leave and respond to another police call nearby.

23.     Following the second call, Plaintiff Webb returned to the lot on Route 13, having attempted to contact Officer Anderson and having driven to 1932 Trenton Avenue and seeing Anderson's patrol vehicle but no Anderson.

24.     Plaintiff Webb attempted to contact Anderson over police radio and after several minutes Anderson responded and indicated that he was fine and would return to the lot where Plaintiff Webb was parked in several minutes.

25.     Approximately 10 to 15 minutes later, Anderson returned to the lot on Route 13 where Plaintiff Webb was waiting in his patrol vehicle.

26.     When Anderson pulled his vehicle next to Plaintiff Webb's, Plaintiff noticed Anderson was grinning.  Anderson then proceeded to state to Webb that "you're not going to believe what just happened to me."

27.     Anderson proceeded to tell Plaintiff Webb a story of a sexual encounter he had with the owner of the home at 1932 Trenton Avenue.

28.     In telling the story to Plaintiff Webb, Anderson indicated that the woman, Joann Cipressi, did not want to participate in some of the activity Anderson was describing stating that she was coming up with excuses like "you're married" and "I'm sweaty and tired."

29.     Anderson then indicated that he pulled out his penis and stated that "now it's my turn" to which Ms. Cipressi said "I'm tired, why don't you just go."  Anderson did leave but not before extracting a promise that Ms. Cipressi would finish their sexual encounter another time.

30.     At this time, Plaintiff Webb told Anderson that he was "screwed," meaning that Anderson's story was of a non-consensual nature.

31.     At that very moment, Anderson received a telephone call on his cell phone informing him that Ms. Ciprssi wanted to speak to a Sergeant or office in charge as a complaint had been made about his conduct with the owner at 1932 Trenton Avenue.  As the officer in

charge, Plaintiff Webb contacted a superior, who directed Anderson to immediately return to the police station.

32.     As the officer in charge, Plaintiff Webb was responsible for investigating the matter, which included interviewing the complainant, Ms. Cipressi, and collecting evidence, including a DNA sample.

33.     Plaintiff Webb carried out his official responsibilities even though he had been a friend of Anderson.

34.     On September 8, 2008, Anderson resigned as a Bristol Borough police officer, as a result of a police investigation that ultimately led to Anderson's arrest and guilty plea to Official Oppression, resulting in a sentence of 3 to 23 months incarceration, an order for mental health evaluation and supervision by the sex offender unit of the Probation Department.

35.     Prior to the incident involving Anderson and his illegal conduct with Ms. Cipressi, Plaintiff Webb was viewed by Defendant DiGuiseppe as a "golden boy."

36.     As a result of Plaintiff Webb's decision to carry out his official responsibilities as a Bristol Borough Police Officer in relation to the Anderson incident, he was ostracized by Defendants Moors, Morris, and Porter.

37.     When other Bristol Borough police officers, in support of Anderson, would call Ms. Cipressi a "whore," Webb objected and made it clear that his view of Anderson's conduct was "wrong."

38.     Plaintiff Webb also made it clear that although he worked as a Bristol Borough police officer and was friends with his fellow officers, he would not lie if questioned by the authorities.

46.     As a result of the retaliatory animus by Defendants, Plaintiff lives in constant fear of being placed in a life threatening situation at work, without backup responding.

47.     On April 9, 2010, a federal civil rights lawsuit was filed by Joanne Cipressi at *Joanne Cipressi v. Bristol Borough, et al, 2:10-CV-01584-AB*, against Bristol Borough, Samuel Anderson, Sergeant Moors, Detective Morris and Chief Porter, alleging, in part, that the Borough and its officers knew of Anderson's propensity to engage in illegal sexual contact with woman while on duty and did not act, ultimately causing damages to Cipressi.

48.     On July 5, 2010, Defendants Ellis and Palmer harassed Plaintiff Webb by signing their names to a note left hanging in the kitchen area of the Police Department.  Webb had asked for an investigation into the unauthorized opening of interdepartmental mail.  By reason of the fact that Defendant Porter refused to conduct an investigation, Webb sent the contents of the envelope in question to a neighboring police department for fingerprinting.  The note left hanging in the kitchen stated, "Your mother is not here to clean your dishes.  Please clean up after yourself. Thank you Chuck and Jim."  Defendants Ellis and Palmer left their fingerprints clearly visible on the note to mock Webb's desire to determine who was opening interdepartmental mail without approval.

49.     On January 25, 2011, Defendant Lebo called a Departmental meeting to discuss a number of issues including the lack of officer-issued citations.  Defendant Moors made a comment alluding to the fact that Plaintiff Webb had issued only one citation in 2010, which created a contentious issue during the most recent contract negotiations.  As a former police officer, Defendant Lebo never commented to Defendant Moors regarding his inappropriate comments.  Defendant Porter was also at the meeting and failed to correct Moors. Both Defendants Lebo, Porter, and Moors knew at the time that Pennsylvania law prohibits municipalities from mandated the issuance of tickets.

50.     On February 2, 2011 by memo to Defendant Porter, the inappropriate comments were made known to him. In spite of this notice, Defendant Porter did not discipline anyone as a result of the violation of law.

51.     On May 6, 2010, Plaintiff Webb received a telephone call from Defendant Gerber who introduced himself as the attorney for the insurance company, the Borough of Bristol and the Police Department and the police officers, in connection with the Cipressi matter.

52.     In the telephone conversation, which lasted approximately 30 minutes, Plaintiff Webb discussed the possibility of him being deposed in the Cipressi matter. Defendant Gerber suggested through inference that he would be representing Plaintiff Webb and would instruct him not to answer certain questions. Plaintiff Webb thanked Defendant Gerber for providing legal representation.

53.     Defendant Gerber also indicated that Plaintiff Webb should call him should he have any questions, and scheduled a subsequent in-person meeting for May 10, 2010.

54.     On May 10, 2010, Plaintiff met with Defendant Gerber at Borough Hall and discussed the Cipressi case and Plaintiff's testimony. It was at this meeting that Defendant Gerber attempted to persuade Plaintiff to change his testimony regarding his recollection of the events involving Anderson, sexual activities involving other officers and other inappropriate and illegal conduct by officers and supervisors at the Bristol Borough Police Department.

55.     During this meeting, Plaintiff Webb indicated that he personally observed Anderson's lie detector test and the results that Anderson failed the test. Defendant Gerber stated to Plaintiff Webb "what if that test never existed?" suggesting that they could dispose of it.

56.     Plaintiff Webb made it clear that he saw the test and results himself and would not lie for the Borough or anyone, including Defendant Gerber.

57.     Defendant Gerber requested that Plaintiff Webb put more of a "pro-Bristol Borough" spin on the events of August 29, 2008 involving Anderson and Cipressi.

58.     When Plaintiff Webb stated he would not do this.  The meeting of May 10, 2010 ended abruptly and in anger.

59.     On September 13, 2010, at Defendant Gerber's request, Plaintiff Webb met again in the Community Room at the Town Hall in Bristol Borough; present at the meeting which lasted 90 minutes, was Defendant Gerber and William Salerno, the Solicitor for the Borough of Bristol.

60.     Again at this meeting, Defendant Gerber suggested to Plaintiff that it would be in his best interest to change his testimony, for the sake of his career and for the sake of his fellow officers in Bristol Borough.

61.     At the conclusion of this meeting, Defendant Gerber provided Plaintiff with his business card and told him to contact him if there were any issues he recalled that he had not previously addressed with Defendant, and again reminded Plaintiff to consider what was discussed, strongly urging him to reconsider his testimony and recollection.

62.     On March 28, 2011, Plaintiff Webb was subpoenaed to testify at a deposition in the Cipressi matter on Monday, April 11, 2011.

63.     On Thursday, April 7, 2011, near the end of his shift and just four days prior to the scheduled deposition, Plaintiff Webb received a faxed letter from Defendant Gerber, whom he believed was his counsel, informing him that he would not be representing him at the deposition.

64.     When Plaintiff Webb received this faxed letter by Defendant Gerber, he became upset and in front of his Sergeant William Lutz indicated his displeasure.

65.     Later on that evening, after having been home for approximately five hours, at 12:22 AM on April 8, 2011, Plaintiff Webb received a telephone call from Defendant Lebo informing him that he needed to come down to the police station to address allegations that he threatened to shoot someone.

66.     Plaintiff Webb denied ever threatening anyone and pleaded with Defendant Lebo to contact the only eye-witness to his conduct, Sergeant William Lutz.

67.     Defendant Lebo did contact Sergeant Lutz who confirmed Plaintiff's claims.

68.     Despite the only eyewitness to the incident confirming that Plaintiff Webb never threatened anyone, Defendant Lebo called Plaintiff Webb again at 1:42 AM on April 8, 2011 and insisted he return to the station for questioning.

69.     Plaintiff Webb informed Defendant Lebo that he had a few social drinks since coming home and he did not feel comfortable to drive a vehicle.  Thereafter, Defendant Lebo stopped insisting he come to the station.  Plaintiff Webb invited Lebo to his house should he wish to discuss anything.

70.     Thereafter on April 8, 2011, Plaintiff was suspended for over 11 weeks pending an investigation based upon the erroneous memos supplied to Defendants Porter and Lebo by Defendants, Maria Robles and Dean Johnson. It was not for approximately five weeks until Plaintiff Webb received written notification of his suspension.

71.     The matter was fully investigated by the Bucks County Detectives and found to be without merit.

72.     Thereafter, the Borough retained Daniel Becker, Esquire, a personal friend of Defendant Gerber, to conduct an investigation on behalf of the Borough into the baseless allegations against Plaintiff Webb.

13

73.     As a result, a Loudermill hearing was scheduled, despite this action never having been done in all the years Plaintiff Webb has been employed at Defendant Bristol Borough Police Department.

74.     The Supreme Court held in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the process that is due a public employee includes a pre-termination hearing that provides "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." The Loudermill letter fulfills the requirement of written notice, and should include an explanation of the employer's evidence "to act as a check for mistaken accusations".

75.     Plaintiff Webb was provided less than 20 hours notice of the Loudermill hearing which included the notice of the charges and the evidence against him.

76.     The panel who listened and evaluated the evidence included Defendant Lebo and Defendant Porter.

77.     As a result, with no credible evidence supporting the allegations, Defendant Lebo and Defendant Porter recommended that Plaintiff Webb be disciplined for "conduct unbecoming of an officer."

78.     Included in the discipline was a letter that would remain in Plaintiff Webb's personnel file for a two year period.

79.     Upon his return to work on June 24, 2011, Defendant Palmer wrote a note in the pass-on book that everyone should remember safety first and to wear their vests. Safety reminders are never placed in the pass-on book. Defendant Palmer clearly wrote this note on Webb's first day returning to duty to harass him as a result that Webb was accused of threatening to shoot someone.

14

80.     On August 10, 2011, Defendant Moors unilaterally modified the overtime availability chart so that Plantiff Webb would be unable to receive much, if any, overtime work. Moors actions were in retaliation for Webb not agreeing to misrepresent the truth about the Police Department.

81.     On October 31, 2011, Defendant Moors, while on duty, drove past Webb's home to advise him of Mandatory Updates on November 2nd and 3rd. Both Moors and Sgt. Lutz had previously spoken with Webb. Defendant Moors' actions in driving to Webb's home was his way of intimidating Webb after Webb was deposed and gave negative testimony against Moors.

82.     Plaintiff Webb has since been retaliated against by his failure to change his recollection of events pertaining to the conduct of the officers at the Bristol Borough Police Department, all to his detriment.

83.     On August 15, 2011 while Plaintiff Webb was on duty, someone went to the squad desk that is used by him and threw his full bottle of water into the trash. Thereafter, someone placed on the bulletin board immediately above his squad desk a racist picture that included the words, "STOP are you wearing your vest?" This act was specifically addressed to Plaintiff Webb and the disciplinary action taken against him. Plaintiff Webb wrote an incident report which was properly lodged with his superiors. As Chief of Police, Defendant Porter has not investigated the matter, has not commented on the matter, and has permitted the racist and improper picture to remain on the bulletin board only a few feet from his own personal office.

84.     As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and continues to suffer mental pain and anguish that has negatively impacted both his professional and personal life. Plaintiff Webb's injuries also include economic loss, as he has been made ineligible for overtime pay, all to his great financial detriment.

85.     As a result of retaliating against Plaintiff for his refusal to misrepresent the facts in the Cipressi matter and the conduct of the Borough Police Department, Plaintiff's otherwise unblemished personnel file has been tarnished, with a false reprimand which will remain in his file for at least 2 years.  This reprimand makes Plaintiff ineligible for promotions and/or alternative employment, should he so seek, all to his great detriment.

## COUNT I
## FEDERAL CAUSE OF ACTION
## 42 U.S.C. § 1983, § 1985 and 42 U.S.C. § 1988
## United States Constitution, First Amendment
## <u>Plaintiff Ritchie Webb  v. All Defendants</u>

86.     Plaintiff Ritchie Webb hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

87.     The acts of Defendants described herein were committed under color of state law, either directly or through conspiracy whereby defendants conspired to deprive Webb of his civil rights to be free from retaliation for otherwise constitutionally protected activity.

88.     By the acts described above, Defendants conspired retaliated against Plaintiff Ritchie Webb for his protected speech as a citizen on a matter of public concern.  Defendants' acts violated Plaintiff Webb's rights under the First Amendment of the United States Constitution, made applicable against the Commonwealth of Pennsylvania through the 14th Amendment.

89.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff Webb has incurred economic losses, including but not limited to lost income and lost benefits.  These losses are continuing to accrue daily and will be determined by a jury at the time of trial.

16

90.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff Webb has suffered economic loss of future income and impairment of earning capacity in an amount to be determined by the jury.

91.     As a direct and proximate result of the unlawful acts of the Defendants Bristol Borough, Arnold Porter, Joseph Moors, Randy Morris, Robert Lebo, Ralph Diguiseppe, Jr., Maria Robles, Dean Johnson, and Christopher Gerber, Plaintiff was retaliated against, causing him to suffer significant emotional distress, public humiliation, damages to his reputation, depression, loss of dignity and self esteem, anxiety, loss of companionship of his family and loss of enjoyment of life, all in amounts to be determined by the jury at trial.

92.     The above-described actions of Defendants were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

## COUNT II

### FEDERAL CAUSE OF ACTION

### 42 U.S.C. § 1983 and 42 U.S.C. § 1988

**United States constitution, Fourteenth Amendment (Due Process)**
**Plaintiff Ritchie Webb v. Defendants Bristol Borough, Arnold Porter,**
**Joseph Moors, Randy Morris, Robert Lebo, and Ralph Diguiseppe, Jr.**

93.     Plaintiff Ritchie Webb hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

94.     The acts of Defendants described herein were taken under color of state law, either directly or through conspiracy.

95.     By the acts described above, Defendants deprived Plaintiff Webb of his rights without due process of law, as guaranteed by the 14th Amendment.

17

96.     As a direct and proximate result of the actions of the Defendants, jointly and individually, Plaintiff was retaliated against, causing him physical and psychological trauma, thereby intentionally depriving him of his rights, privileges and immunities in violation of the Fourteenth Amendment to the United States Constitution and the laws of the Commonwealth of Pennsylvania; and in particular, to due process and equal protection under the law.

97.     Defendant Bristol Borough, Arnold Porter, Joseph Moors, Randy Morris, Robert Lebo, Ralph Diguiseppe, Jr., as a matter of policy or practice, have, with deliberate indifference to the rights of its citizens, including Plaintiff, failed to:

a.     adequately hire, discipline, train, supervise and/or otherwise direct employees, including Defendants in this case, concerning the rights of persons;

b.     establish a system which properly identifies, reports and/or investigates instances of improper conduct by its employees, including Defendants in this case; and

c.     adequately sanction and/or discipline its employees, including Defendants in this case, for violations of the rights of persons;

hereby causing Defendants, in this case, to engage in the unlawful conduct described herein.

98.     Defendants have intentionally with deliberate indifference to the rights of persons, such as Plaintiff, failed to establish a system which properly identifies, reports and/or investigates instances of improper and illegal conduct, and thereby, permitted, encouraged and tolerated a pattern and practice of employees, officials, and agents, including Defendants in this case, in abusing their powers.

99.     Defendants, as a matter of policy or practice, have, with deliberate indifference to the rights of persons, such as Plaintiff, failed to adequately sanction and/or discipline its employees, officials, and agents, including Defendants in this case, for violations of the rights of individuals, thereby causing Defendants in this case to engage in the unlawful conduct described herein.

100.     Defendants, as a matter of policy or practice, have, with deliberate indifference to the rights of persons, such as Plaintiff, failed to adequately sanction and/or discipline its employees, officials, and agents, including the Defendants in this case, who are aware of and conceal violations of the rights of citizens, thereby causing and encouraging Defendants in this case to engage in the unlawful conduct described herein.

101.     As a direct and proximate cause of the actions of Defendants, individually and jointly, Plaintiff suffered the following injury and damages:

      a.     Violation of his constitutional rights, privileges and immunities under the First and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania; and in particular, his rights to due process and equal protection under the law;

      b.     Pain and suffering and emotional trauma and suffering, some or all of which may be permanent.

102.     As a direct result of the intentional improper and unlawful acts of the Defendants in this case, Plaintiff suffered from, and continue to suffer from a loss of life's pleasures.

## STATE CAUSES OF ACTION

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## Plaintiff Ritchie Webb  v. All Defendants

103.     Plaintiff Ritchie Webb hereby incorporates the preceding paragraphs of this Complaint as set forth above.

104.     By engaging in the offensive conduct described above, Defendants intentionally and/or recklessly caused severe emotional distress to Plaintiff.

105.     This conduct was extreme and outrageous and went beyond all bounds of decency, and was designed to cause physical harm, fear, grief, shame, humiliation, embarrassment, and anger.

106.     As a direct and proximate result of the aforementioned conduct, Plaintiff suffered and continues to suffer physical injury, severe emotional distress, humiliation, mental pain and anguish, and such other and further losses to be established at trial.


**WHEREFORE**, Plaintiff, Ritchie Webb, demands judgment against all Defendants, jointly and/or severally, in an amount in excess of One Hundred Thousand ($100,000.00) Dollars and requests the following relief:

a.     Declaratory judgment;

b.     Compensatory damages;

c.     Punitive damages;

d.     Reasonable attorney's fees and costs;

e.     Other and further relief as this Court may deem appropriate.


Respectfully submitted,

**Hornstine Wertheimer & Pelloni, LLC**

By: _____
Louis F. Hornstine, Esquire
Attorney I.D. # 25245
Lou@Hornstine.com

1500 Walnut Street
22nd Floor
Philadelphia, Pa 19102
Tel: (215) 568-4968
Attorney for Plaintiff

Date: <u>December 23, 2011</u>