**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RITCHIE WEBB, | : | |
|    Plaintiff, | : | |
| | : | CIVIL ACTION |
| | : | |
|        v. | : | NO. 11-7834 |
| | : | |
| | : | |
| BRISTOL BOROUGH, et al., | : | |
|    Defendants. | : | |

_____

**July 24, 2012**                                                    **Anita B. Brody, J.**

<u>**EXPLANATION AND ORDER**</u>

Plaintiff Ritchie Webb brings this action against Defendants Bristol Borough ("Bristol"),

Attorney Christopher Gerber ("Gerber"), Law Firm Siana, Bellwoar & McAndrew, LLP

("Siana") and the following Bristol officials and employees in their individual and official

capacities: Arnold A. Porter (police chief), Joseph Moors (police sergeant), Randy Morris (police

detective), Robert A. Lebo (Bristol mayor), Ralph DiGuiseppe, Jr. (Bristol council president),

Maria Robles (patrolwoman), Dean Johnson (patrolman), James Ellis (patrolman), and Charles

Palmer (patrolman).  Webb brings suit against select Defendants under 42 U.S.C. §§ 1983, 1985

and Pennsylvania state law.[1]  Webb seeks judgment in excess of $100,000.00, as well as

declaratory judgment relief.  Defendants moved to dismiss all counts.  Gerber and Siana filed a

joint motion to dismiss (Doc. No. 32), and the remaining Defendants filed a separate motion to

---

[1] In Counts I, II, and III, Webb also invokes 42 U.S.C. § 1988.  However, "section 1988 does not create independent causes of action, it simply 'defines procedures under which remedies may be sought in civil rights actions.'" *Schroder v. Volcker,* 864 F.2d 97, 99 (10th Cir. 1988) (quoting *Brown v. Reardon,* 770 F.2d 896, 907 (10th Cir. 1985)); *see also Tunstall v. Office of Judicial Support,* 820 F.2d 631, 633 (3d Cir. 1987) (citing *Moor v. Cnty. of Alameda,* 411 U.S. 693, 702 (1973), for the proposition that "§ 1988 does not create an independent federal cause of action; it is merely intended to complement the various acts which do create federal causes of action for the violation of federal civil rights").

dismiss (Doc. No. 31).  Gerber subsequently filed a supplemental motion to dismiss on the

grounds of qualified immunity (Doc. No. 54).  Federal jurisdiction is proper pursuant to 28

U.S.C. § 1331 and 28 U.S.C. § 1343.  Supplemental jurisdiction over the state claims is proper

pursuant to 28 U.S.C. § 1367.

## I.    BACKGROUND[2]

In 1999, Bristol Borough, a municipality in Bucks County, Pennsylvania, hired Ritchie

Webb as a part-time patrolman.  Five years later, Bristol promoted Webb to a full-time position.

On August 29, 2008, Webb was on duty with his partner Samuel C. Anderson.  Around 3:15

a.m., the officers were in their respective patrol vehicles when Anderson received a call of a

domestic dispute.  Joanne Cipressi called 9-1-1 because her intoxicated ex-boyfriend appeared at

her home and refused to leave.  Anderson headed to Cipressi's home, and Webb responded as

back-up.  Anderson told Webb that he had the situation under control, so Webb left to respond to

another call.  Webb later returned to the Cipressi home but only saw Anderson's empty vehicle.

The partners reconvened ten to fifteen minutes later when Anderson recounted his non-

consensual sexual encounter with Cipressi.  Cipressi then called to make a formal complaint, and

Webb promptly contacted a superior.  Anderson returned to the police station and Webb, as the

officer-in-charge that evening, carried out the investigation.  He interviewed Cipressi and

collected evidence, including a DNA sample.  Six weeks later, Anderson resigned and went on to

serve time in prison.

Webb's claims stem from the treatment he received from his supervisors and fellow

officers following the Cipressi incident.  Prior to that evening, Webb had a stellar reputation.

But after his investigation, Webb was ostracized and harassed for his refusal to cover for

---

[2] The facts are stated most favorably to the Plaintiff.

Anderson.  For example, police sergeant Joseph Moors and police detective Randy Morris

visited Webb at his home and threatened to fire him if he told anyone about any sexual incidents

involving Anderson, including the Cipressi encounter.  Moors returned to Webb's home twice to

remind him to keep his mouth shut and belittled Webb in front of his fellow police officers.  As a

result, officers did not provide back-up when Webb responded to calls.

On April 9, 2010, Cipressi filed a related civil suit against Bristol Borough, Samuel

Anderson, and other Bristol Borough police officers.  *Cipressi v. Bristol Borough, et al.*, No. 10-

cv-1584.[3]  On May 6, 2010, Webb received a phone call from attorney Christopher Gerber at the

Siana law firm.  Gerber explained that Bristol's insurance company hired him to represent the

police department and its officers.  Gerber informed Webb that he may be deposed in the

*Cipressi* matter and led him to believe that Gerber would represent him at the deposition.  Four

days later, Gerber met Webb in person and attempted to persuade him to alter his version of what

happened between Anderson and Cipressi.  Gerber even suggested that Webb forget about

witnessing Anderson's lie detector test.  Webb refused to put a more "pro-Bristol Borough" spin

on events.  On September 13, 2010, Gerber again suggested that Webb alter his testimony.

Gerber then gave Webb his business card and told Webb to contact him if he recalled anything

new.  Meanwhile, Webb's fellow officers continued to harass and intimidate him at work.

On March 28, 2011, Webb was subpoenaed in the *Cipressi* case.  The deposition was

initially scheduled for April 11, 2011.  On April 7, 2011, Gerber informed Webb via fax that

neither he nor anyone at his firm would be representing him at the upcoming deposition.  Later

that night, officers Maria Robles and Dean Johnson accused Webb of threatening to shoot

someone after learning that the Borough was not going to represent him.  Mayor Lebo called

---

[3] Cipressi did not name Webb in her suit.  The case is currently in the discovery phase of litigation.

Webb at home and demanded that he return to the station for questioning.  Webb told Lebo to

call Sergeant Lutz who could confirm that Webb never threatened anyone.  In spite of Lutz's

confirmation, Lebo still instructed Webb to return to the station.  Webb told the Mayor that he

had a couple of drinks and was not comfortable driving.  Webb invited Lebo over to discuss the

matter, but the Mayor declined.

On April 8, 2011, Webb received oral notification of his suspension.  He did not receive

written notification until May 6, 2011.  On June 8, 2011, Webb received notice of a pre-

deprivation *Loudermill* Hearing scheduled for June 9, 2011 to address the alleged incident.  *See*

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).  Mayor Lebo and Chief Porter

conducted the hearing and placed a letter of discipline in Webb's personnel file for "conduct

unbecoming of an officer."  On June 24, 2011, Webb returned to work, where he was subjected

to continued harassment by his fellow officers.  On September 21, 2011, Webb was deposed in

the *Cipressi* case.  The harassment continued after the deposition.

## II.    LEGAL STANDARD

A motion to dismiss should be granted under Rule 12(b)(6) if the moving party "under

any reasonable reading of the complaint . . . may be entitled to relief."  *Kerchner v. Obama*, 612

F.3d 204, 207 (3d Cir. 2010) (internal quotation marks omitted).  The Complaint must allege

facts sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face."  *Id.* (internal quotation marks omitted).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). This "assumption of truth" is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79.

## III.   DISCUSSION

### a.   Absolute Immunity: Mayor Robert Lebo & Police Chief Arnold Porter

- Defendant Lebo's motion to dismiss as to Counts IV-VI (state law claims) on the grounds of high public official immunity is granted. Defendant Porter's motion to dismiss as to Counts IV-VI (state law claims) on the grounds of high public official immunity is denied without prejudice.

Defendants Lebo and Porter move to dismiss the state law claims against them on the grounds of high public official immunity. Pennsylvania law affords high public officials absolute immunity from defamation suits. *See Lindner v. Mollan*, 677 A.2d 1194 (Pa. 1996). My colleague also predicted that the Supreme Court of Pennsylvania would extend absolute immunity to high public officials in civil suits for intentional infliction of emotional distress and invasion of privacy. *See Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 426 (E.D. Pa. 2000) (DuBois, J.). The doctrine only applies, however, if the officials made the statements or carried out the actions in question in the course of their official duties. *Lindner*, 677 A.2d at 1199.

A mayor is a high public official entitled to absolute immunity. *Id.* at 1198. Webb does not dispute that Mayor Lebo was carrying out his official duties. He even acknowledges that "it is likely that the [M]ayor is entitled to immunity." Pl.'s Resp. 29. Webb also acknowledges that

Chief Porter was carrying out his official duties.  So the only remaining question is whether a police chief qualifies as a high public official.[4]  According to the Pennsylvania Supreme Court, such a determination depends upon "'the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions.'" *Lindner*, 677 A.2d at 1198 (citing *Montgomery v. City of Phila.*, 140 A.2d 100, 105 (Pa. 1958)).  The judiciary is supposed to make this determination on a case-by-case basis, so discovery is necessary.  *Lindner*, 677 A.2d at 1198.

### b.  Qualified Immunity: Attorney Christopher Gerber

- Defendant Gerber's motion to dismiss on grounds of qualified immunity is denied without prejudice.

Attorney Christopher Gerber filed a supplemental motion to dismiss on the grounds of qualified immunity.  Doc. No. 54.  He claims that he is entitled to qualified immunity as an outside employee working for the government.  In *Richardson v. McKnight*, 521 U.S. 399 (1997), the Supreme Court denied qualified immunity to prison guards employed by a private company who worked in a privately run prison facility.  The for-profit corporation had a contract with the state to manage its correctional center.  However, in the United States Supreme Court's recent opinion in *Filarsky v. Delia*, 132 S. Ct. 1657 (2012), the City of Rialto, California hired private attorney Steve Filarsky to conduct an investigation of an allegedly derelict city firefighter.  Subsequently, the firefighter initiated a suit under 42 U.S.C. § 1983 against the City, the Fire Department, Filarsky, and other individuals alleging that they violated his constitutional rights in carrying out the investigation.  Overturning the Ninth Circuit, the Court ruled that an

---

[4] The Common Pleas Court of Delaware County held that a chief of police falls into the class of high public officials.  But the court assumed that the chief made policy and that may not necessarily be the case for all chiefs of police.  *See Ammlung v. City of Chester*, 53 Pa. D. & C. 2d 169, 172 (Pa. Com. Pl. Delaware Aug. 16, 1971) ("The posts of mayor and chief of police fall into the class of 'high public officials.'  The nature of their duties and the importance of their offices are obvious, and each makes policy.").

individual hired by government is not "prohibited from seeking such immunity, solely because he works for the government on something other than a permanent basis." *Filarsky*, 132 S. Ct. at 1660.

Yet the *Filarsky* Court explicitly refrained from overruling its earlier decision in *Richardson*. Both decisions focused on the relationship between the government body and the private employee, such as the degree of government supervision and the nature of the hiring process. *See Richardson*, 521 U.S. at 409; *Filarsky*, 132 S. Ct. at 1665-66. Gerber was a private attorney representing Bristol Borough. But he was hired by an outside insurance company to represent the City in a separate case (*Cipressi v. Bristol Borough*). Discovery will help reveal the exact nature of the working relationship between Gerber, Bristol Borough, and the other Defendants.

If Gerber is entitled to seek qualified immunity, he is subject to the two-step *Saucier* test, as modified in *Pearson*. *See Pearson v. Callahan*, 555 U.S. 223 (2009) (eliminating the *Saucier v. Katz*, 533 U.S. 194 (2001), mandatory sequence for courts carrying out the two-step qualified immunity test). In no particular order, the Court must determine whether the facts alleged by Webb "make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of [Gerber's] alleged misconduct." *Pearson*, 555 U.S. at 232 (internal citations omitted). Therefore, Webb can only overcome qualified immunity if "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Discovery is needed to determine whether Gerber meets the two-step test.

### c. Section 1983 Claims against Siana, Bellwoar & McAndrew, LLP

- Defendant Siana's motion to dismiss as to Counts I and II (Section 1983 claims) is granted.

In the amended complaint, Webb alleges that the law firm "employs Defendant Gerber and is thus vicariously liable for his actions." Am. Compl. ¶ 11. Webb does not make any factual allegations against the firm and seeks to hold Siana liable under the theory of *respondeat superior*. The Supreme Court, however, has made clear that municipalities cannot be held liable for Section 1983 violations on the theory of *respondeat superior*. *See Canton v. Harris*, 489 U.S. 378, 385 (1989). Although the law firm is not a municipality, "Section 1983 does not permit the finding of liability based on any *respondeat superior* theory." *Mabine v. Vaughn*, 25 F. Supp. 2d 587, 592 (E.D. Pa. 1998).

### d.  Count I: First Amendment

- Defendants' motions to dismiss Webb's First Amendment retaliation claim is denied without prejudice. Discovery is needed to determine the nature of his allegedly protected speech, the specifics of the allegedly retaliatory action, and each Defendant's individual role.[5]

### e.  Count II: Fourteenth Amendment

- Defendants' motion to dismiss Webb's Fourteenth Amendment due process claims is denied without prejudice.[6] Discovery is needed to determine the nature of Webb's employment, the circumstances surrounding his punishment, and each Defendant's individual role.

### f.  Count III: *Monell* Claim

- Bristol Borough's motion to dismiss Webb's *Monell* claim is denied without prejudice.

    *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

---

[5] This includes the need for discovery to determine whether Defendant Gerber, in his role as attorney, qualifies as a state actor and/or as a conspirator. *See Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (holding that a person may be considered a state actor when "he has acted together with or has obtained significant aid from state officials") (internal citation omitted); *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999) (holding that an attorney who acts outside the scope of representation can form a conspiracy with his client). Even if Gerber is a state actor, the issue remains as to whether his defense of qualified immunity is viable.

[6] At the motion to dismiss stage, I will not examine the Collective Bargaining Agreement and other exhibits attached to Webb's response.

In *Monell*, the Supreme Court held that municipalities "can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[7] *Id.* at 690.  *Monell* claims require underlying constitutional violations, and discovery is necessary to determine the nature of those alleged violations.

### g.   Statute of Limitations

- Defendants' motion to dismiss claims on statute of limitations grounds is denied without prejudice.

On December 23, 2011, Webb filed his complaint.  Section 1983 actions are governed by the personal injury statute of limitations of the state in which the cause of action accrued.  *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006).  In Pennsylvania, the applicable statute of limitations is two years.  42 Pa. Cons. Stat. § 5524.  Defendants move to dismiss all claims arising from conduct that took place before December 23, 2009.  Only discovery can provide a complete picture of what took place prior to December 23, 2009 and whether such facts constitute continuing violations or individually actionable claims.

### h.   State Causes of Action

- Defendants' motion to dismiss state claims is denied without prejudice.  Webb brings state causes of action for intentional infliction of emotional distress, defamation, and invasion of privacy against all Defendants, except Bristol Borough and Bristol Council President Ralph DiGuiseppe, Jr.  All three counts require discovery.

---

[7] Webb alleges that Defendant Bristol Borough failed to: "(a) adequately hire, discipline, train, supervise and otherwise direct employees . . . concerning the rights of persons; (b) establish a system which properly identifies, reports and/or investigates instances of improper conduct by its employees . . .; and (c) adequately sanction and/or discipline its employees . . . ."  Am. Compl. ¶ 120.

**IV.     CONCLUSION**

For the reasons set forth above, I will grant Defendant Lebo's motion to dismiss as to Counts IV-VI (state law claims).  I will also grant Defendant Siana's motion to dismiss as to Counts I and II (Section 1983 claims).  Finally, I will deny without prejudice the remaining Defendants' motions to dismiss.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                     Copies **MAILED** on _____ to: